UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO.:  06-10223 |
| JACK V. SMITH ) | |
| ) | CHAPTER 11 |
| Debtor ) | |

MOTION FOR ORDER CONVERTING CASE TO CHAPTER 7 CASE OR,
IN THE ALTERNATIVE, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

NOW COMES First-Citizens Bank & Trust Company ("First Citizens"), by and through its undersigned counsel, and moves this Court pursuant to §§ 105 and 1112 of the Bankruptcy Code and Rules 1017(f), 2002 and 9014 of the Federal Rules of Bankruptcy Procedure for an Order converting this case to a case under Chapter 7 or, in the alternative, for the appointment of a Chapter 11 Trustee.  In support of this Motion, First Citizens shows the Court as follows:

PARTIES, JURISDICTION AND VENUE

1.	On April 5, 2006, Jack V. Smith ("Smith" or "Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.	First Citizens is a duly-scheduled creditor of the Debtor.

3.	This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.	This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Western District of North Carolina.

5.	Jack V. Smith ("Smith") is the President, CEO, and 100% stockholder of Sciteck.

6.	Sciteck is a Chapter 11 Debtor in a case pending before this Court (Case No. 06-10013).  After a lengthy evidentiary hearing on February 22, 2006, this Court entered an

Order Appointing Chapter 11 Trustee in that case.  Mark A. Toland serves as Chapter 11 Trustee in that case.

7. A copy of the Order is attached hereto as "Exhibit A" and its findings and conclusions are expressly incorporated into this Motion by reference as if completely set forth.

8. Upon information and belief, Sciteck is a holding company that controls all of the business activities and assets of various affiliated companies including, but not limited to, Sciteck Clinical Laboratories, Inc., Sciteck Diagnostics, Inc., Sciteck Research Laboratories, Inc., Zeta Holdings, New Venture Associates, LLC, Professional Building Design, LLC, Sciteck Occupational Medicine, Inc. Chimera Research & Chemica, Inc., Inventek, Inc. and ASJS Investments, Inc.

9. Upon information and belief, all of the entities named in the immediately preceding Paragraph are mere instrumentalities of Smith, are undercapitalized, follow no corporate formalities, have no separate assets or existence separate from Smith, and are mere alter egos of Smith.

10. Upon information and belief, and in accordance with the representations of Smith, Sciteck generates accounts receivables in the course of its business operations.

STATEMENT OF FIRST CITIZENS' INTERESTS

11. In or around January 2004, First Citizens established a commercial and personal banking relationship with Sciteck and Smith.  This relationship resulted in three separate obligations of the Defendants to First Citizens:  A business line of credit to Sciteck, a business credit card account for Sciteck and guaranteed by Smith, and a personal loan to Smith.

12. Or about January 26, 2004, First Citizens and Sciteck entered into a loan commitment whereby First Citizens, under certain terms and conditions, agreed to provide a $500,000 Line of Credit to Sciteck (the "Sciteck Loan").

13. The Sciteck Loan was to be secured by a first-lien UCC security interest covering all accounts receivables and inventory of Sciteck.

14. A copy of the loan commitment letter is attached hereto as "Exhibit B" and incorporated herein by reference as if completely set forth.

15. Jack Smith, as CEO of Sciteck, represented Sciteck in its dealings with First Citizens and executed all loan documents on their behalf.

2

16. At the time of the loan commitment, Jack Smith, as CEO of Sciteck, represented to First Citizens that, as of November 13, 2003, Sciteck had an adjusted book value of $12,400,000.

17. A copy of Jack Smith's Personal Financial Statement, which contains this information, is attached hereto as "Exhibit C" and incorporated herein by reference as if completely set forth.

18. First Citizens reasonably relied on these representations in making the loan.

19. On or about January 26, 2004, for valuable consideration, Sciteck executed and delivered to First Citizens a Note in the principal amount of Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "Sciteck Note").

20. In conjunction with the Sciteck Note, Sciteck executed an Inventory and Accounts Receivable Security Agreement dated January 26, 2004, covering all inventory and accounts receivables (the "Security Agreement").

21. To perfect the security interest in the property described in the Security Agreement, First Citizens caused a UCC-1 Financing Statement to be filed on February 6, 2004 covering the collateral described therein ("Financing Statement").

22. Copies of the Sciteck Note, Security Agreement and the Financing Statement are attached hereto as "Exhibits D, E, and F", respectively, and incorporated herein by reference as if fully set forth.

23. On January 26, 2004, Jack Smith, in his personal capacity, executed a Promissory Note in favor of First Citizens in the original principal amount of $100,000 (the "Smith Note").

24. A copy of the Note is attached to the Motion as "Exhibit G" and incorporated herein by reference as if fully set forth.

25. Also in 2004, Sciteck applied for a business credit card account ("Account") with First Citizens. As part of the application, Jack Smith executed an Unconditional Guaranty.

26. First Citizens approved the application and issued a card to Sciteck.

3

27. A copy of the Account application is attached hereto as "Exhibit H" and incorporated herein by reference as if completely set forth.

PRE-PETITION LITIGATION

28. Defendants defaulted in their obligations under the Sciteck Note, the Account, and the Smith Note.

29. First Citizens filed three separate action in Buncombe County Superior to collect the balances owing on the Sciteck Note, the Smith Note, and the Account.

30. Defendants were properly served in all three Actions.

31. In the Action on the Sciteck Note, on August 5, 2005, the Court entered a Consent Judgment in favor of First Citizens against Sciteck for $504,872.50 plus interest of $85.89 per day from and after May 2, 2005 until paid in full, plus attorneys' fees of $75,237.97, and court costs.

32. In the Action on the Account, on August 5, 2005, the Court entered a Consent Judgment in favor of First Citizens against Sciteck and Jack Smith, jointly and severally, on the Account for $54,838.73 plus interest of $12.70 per day from and after May 2, 2005 until paid in full, plus attorneys' fees of $8,122.02, and court costs.

33. In the Action on the Smith Note, on August 5, 2005, the Court entered a Consent Judgment in favor of First Citizens against Sciteck and Jack Smith, jointly and severally, on the Account for $99,987.50 plus interest of $15.65 per day from and after May 2, 2005 until paid in full, plus attorneys' fees of $15,046.30, and court costs.

34. A copy of the three Consent Judgments are attached hereto as "Exhibit I", J, and K" and incorporated herein by reference as if completely set forth.

35. As of May 15, 2006, the three Consent Judgments have not been satisfied, in whole or part.

36. On April 7, 2005, counsel for First Citizens deposed Jack V. Smith in connection with the Buncombe County actions.

37. A copy of the deposition transcript is attached hereto as "Exhibit L" and incorporated herein by reference as if completely set forth.

38. In the deposition, Jack Smith testified that Sciteck was "strictly a holding company" and that "it's never generated any income":

4

> Q. And what does Sciteck, Inc. do?
> A. Sciteck, Inc. is strictly a holding company.
> Q. And does - do you own 100% of that?
> A. I own 100% of Sciteck, Inc.
> Q. And is it a holding company for Inventek, Sciteck Diagnostics, Sciteck Clinical Laboratories?
> A. No.
> Q. What comprises or what is it a holding company for, then?
> A. Really, it's just a holding company for its own records, for marketing and sales, getting business for other companies, so on and so forth.
> Q. Does it generate income?
> A. Itself? No. It's never generated any income.
>
> (J. Smith Dep. pp. 11-12.)

39. Smith also testified that Sciteck has no employees and that he is the sole officer and shareholder. (J. Smith Dep. p. 15.)

40. Despite the representations made at the time of the loan commitment, Smith testified that Sciteck did not have any accounts receivable or inventory. (J. Smith Dep. p. 28.)

> Q. Now at that time [the time of execution of the loan commitment], are you telling me that Sciteck, Inc. did not have any inventory or accounts receivable?
> A. That's correct.
> Q. Were you aware at that time that the Bank was relying on this security agreement [Exhibit D] to make the loan?
> A. Yes.

41. At the time of the loan commitment, Wachovia Bank, NA held a first-lien security interest in the accounts receivable and inventory of Sciteck by virtue of UCC-1 Financing Statements filed on December 1, 2003 and March 6, 2003.

42. To grant First Citizens a first lien on this collateral, as required and agreed to by Smith in the loan commitment, Sciteck was required to use the funds from the loan to pay off its obligations to Wachovia and cancel terminate their Financing Statements.

43. Sciteck did not use the funds from the Note to pay off Wachovia and, as a result, Wachovia's Financing Statements remain on record with the North Carolina Secretary of

5

State. Jack Smith testified that Sciteck still owes Wachovia "approximately $350,000." (J. Smith Dep. p. 33.)

44. Upon information and belief, Sciteck has made a number of questionable transfers of funds from its account bearing number -7510 at First Citizens for purposes other than the business operations of Sciteck. These questionable transactions include the following:

| Date | Payee | Amount |
| --- | --- | --- |
| February 5, 2004 | CitiBank | $13,298.18 |
| February 10, 2004 | Wachovia | $7,500.00 |
| February 1, 2004 | IRS | $39,512.13 |
| March 1, 2004 | NC Department of Revenue | $12,826.81 |
| April 22, 2004 | New Venture Associates | $13,000.00 |
| May 14, 2004 | New Venture Associates | $10,000.00 |
| July 15, 2004 | New Venture Associates | $10,000.00 |
| August 6, 2004 | Cash | $30,000.00 |
| August 16, 2004 | New Venture Associates | $10,000.00 |
| August 28, 2004 | Cash | $1,000.00 |
| September 15, 2004 | New Venture Associates | $10,000.00 |
| October 15, 2004 | New Venture Associates | $10,000.00 |
| November 15, 2004 | New Venture Associates | $10,000.00 |
| December 1, 2004 | Cash | $5,000.00 |
| January 20, 2005 | Cash | $19,000.00 |

45. First Citizens propounded discovery to Sciteck in the Buncombe County action to obtain an explanation of these transfers, but Sciteck never responded to the discovery.

46. Regarding the payments to New Venture Associates, Jack Smith testified in his deposition that it is a holding company that "basically does nothing":

    Q.    Now, New Ventures, Inc?
    A.    Yes.
    Q.    Tell me about that.
    A.    It is a holding company.
    Q.    And when you say holding company what do you mean?
    A.    I mean it owns stock in itself, and it's just an entity.

> Q. And what does that entity do?
> A. That one basically does nothing.

(J. Smith Dep. p. 12.)

47. Upon information and belief, Smith may have engaged in similar questionable transfers involving accounts at other financial institutions.

48. Upon information and belief, Jack Smith is the sole officer of the Sciteck-related entities.

49. Upon information and belief, Jack Smith and his wife, Kerstin Lanier, are the sole shareholders of all of these entities.

50. Upon information and belief, Jack Smith exercises complete domination and control of the finances, policy, and business practices of these entities.

51. According to the deposition of Jack Smith, he has orchestrated the unilateral transfer of assets involving Sciteck and some of these entities. The transfers were without consideration and to an insider -- his wife Kerstin Lanier.

> Q. Now, during your introductory/our introductory questions, I believe you indicated that you were not 100% owner of New Venture Associates.
> A. That's correct.
> Q. When did you cease being a 100% owner?
> A. In December of uh '04.
> Q. Okay. And did you - and how much do you now own?
> A. Less than 10%.
> Q. And so, did you sell your interest in the LLC? Is that affirmative?
> A. That's correct.
> Q. Approximately how much did you receive for your interest?
> A. I haven't received anything for it to date.
> Q. So did you - you made a gift of it.
> A. No, not really, it's more of a stock swap.
> Q. Okay. What did you obtain for that swap?
> A. Sciteck Clinical Laboratories, 100% of the stock.
> Q. Well, prior to that time, who owned part of Sciteck Clinical?
> A. Sciteck itself. Myself. I owned 100% of it, so what I did is I made some stock changes between Sciteck Clinical, Sciteck Diagnostics, New Venture Associates - the stocks have been moved around.
> Q. So no third-party was involved -
> A. There is a third-party involved.
> Q. And who is that?
> A. I'll just leave it as a third-party. I mean, I guess they can get it.
> Q. …

7

      A.      Okay, my wife, Kerstin Lanier, is the third-party.
(J. Smith dep. pp. 41-43.)

52. In addition to the three collection actions, First Citizens has brought another action against Smith, his wife Kerstin Lanier, and New Venture Associates, LLC in Buncombe County Superior Court to set aside certain alleged fraudulent transfers.

53. A copy of the First Amended Complaint in that action is attached hereto as "Exhibit M" and incorporated herein by reference as if completely set forth. The fraudulent transfer action involves three claims for relief. The first claim for relief seeks to undo a deed in which Smith transferred his residence from his own separate property to tenants by the entireties property with his wife. Smith orchestrated this transfer after he had defaulted on his obligations with First Citizens and just before they filed suit against him.

54. The second claim for relief asserts that Smith and his wife established a banking account in her name at Mountain 1st Bank in an attempt to hide assets of Smith and hinder, delay or defraud his creditors.

55. As to that claim for relief, First Citizens discovered that over $105,000 existed in the account, but before they were able to obtain a Court Order freezing the funds, Smith and Kerstin Lanier withdrew over $102,000 from the account.

56. First Citizens did obtain a Court Order directing Kerstin Lanier and Smith to not dispose of funds in their possession, but they did so anyway.

57. As a result of their conduct, the Clerk of Court for Buncombe County signed a Show Cause Order directing Kerstin Lanier to appear and show cause as to why she should not be held in criminal contempt of Court.

58. A copy of the Order is attached as "Exhibit N" and incorporated herein by reference as if completely set forth.

59. The conduct of Smith and Kerstin Lanier with respect to the funds in the Mountain 1st account occurred in February 2006.

60. The third claim for relief in the fraudulent transfer action seeks to pierce the corporate veil of New Venture Associates, LLC.

## CAUSE EXISTS FOR THIS CASE TO BE CONVERTED TO A CASE UNDER CHAPTER 7

61. Section 1112(b)(1) requires the Court to convert a chapter 11 case to a case under chapter 7 if the moving party establishes cause for the conversion and conversion is in the best interests of creditors and the estate, absent only unusual circumstances.

62. The allegations set forth above establish <u>CAUSE</u> for this Court to enter an Order converting this case to a case under chapter 7. The following factors establish cause:

    a. evidence of substantial and continuing loss to or dimunition of the estate and the absence of a reasonable likelihood of rehabilitation;

    b. evidence of gross mismanagement of the estate;

    c. pre-petition fraudulent and preferential transfers of Smith's and Sciteck's assets to (i) Smith, (ii) his wife and (iii) third parties;

    d. Smith has failed to preserve and properly distribute assets of Smith and Sciteck;

    e. Smith has taken advantage of his position for his own benefit at the expense of his and Sciteck's creditors;

    f. Smith has exercised complete dominion and control of the assets and business practices of Sciteck and its related entities;

    g. Smith has made numerous false statements to First Citizens;

    h. Smith has failed to properly maintain the books and records of Sciteck;

    i. Smith has listed income from Sciteck for him and his spouse, neither of which have been approved for employment by this Court;

    j. Smith's expenses are grossly excessive; and

    k. such appointment is in the best interests of the estate and its creditors.

63. Conversion (as opposed to dismissal) of this case to a case under chapter 7 will enable a chapter 7 trustee to:

    a. fully investigate any questionable pre-petition conduct;

    b.  fully investigate and review the books and records of the Debtor and any of its related entities;

    c.  recover and preserve any avoidance actions;

    d.  recover and preserve any remaining assets for the benefit of creditors; and

    e.  discharge its duties under § 704.

  WHEREFORE, First Citizens prays unto the Court as follows:

  1.  That the Court enter an Order (i) converting this case to a case under chapter 7 and (ii) appointing a chapter 7 trustee to exercise its duties under § 704.

  2.  Alternatively, that the Court appoint a Chapter 11 Trustee.

  3.  That the Court schedule a hearing on this Motion on June 21, 2006 in the United States Bankruptcy Court in Asheville, North Carolina.

  4.  That First Citizens Bank have and recover such other and further relief as to the Court seems just and proper.

  This the 15th day of May, 2006.

          /s/ Paul A. Fanning
          Paul A. Fanning
          N.C. State Bar I.D. No.:  025477
          For the firm of
          Ward and Smith, P.A.
          120 West Fire Tower Road
          Post Office Box 8088
          Greenville, NC  27835-8088
          Telephone:  (252) 215-4027
          Facsimile:  (252) 215-4077
          Attorneys for First-Citizens Bank & Trust Company

730098-09888
GVMAIN\426502\1